EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| David R. Segarra Rivera<br><br>Recurrido<br><br>v.<br><br>International Shipping Agency, Inc.; Intership Tote, Inc./ Tote Maritime Puerto Rico, LLC; Puerto Rico Terminals, LLC y otros<br><br>Peticionarios | Certiorari<br><br>2022 TSPR 31<br><br>208 DPR ____ |

Número del Caso: CC-2019-193
cons. con
CC-2019-194


Fecha: 23 de marzo de 2022


**CC-2019-193**


Tribunal de Apelaciones:

  Panel VIII


Abogados de los peticionarios:

**International Shipping Agency, Inc.**

  Lcdo. José A. Silva Cofresí
  Lcda. Carmen R. Juarbe Montijo


**Tote Maritime Puerto Rico, LLC**
**y Puerto Rico Terminals LLC**

  Lcdo. Roberto Busó Aboy
  Lcdo. Pedro A. Busó García
  Lcdo. José J. Santiago Meléndez


Abogados del recurrido:

  Lcda. Yesenia M. Verla Colón
  Lcdo. Manuel Porro Vizcarra

**CC-2019-194**

Tribunal de Apelaciones:

Panel VIII

Abogados de los peticionarios:

**Tote Maritime Puerto Rico, LLC**
**y Puerto Rico Terminals LLC**

Lcdo. Roberto Busó Aboy
Lcdo. Pedro A. Busó García
Lcdo. José J. Santiago Meléndez

**International Shipping Agency, Inc.**

Lcdo. José A. Silva Cofresí
Lcda. Carmen R. Juarbe Montijo

Abogados del recurrido:

Lcda. Yesenia M. Verla Colón
Lcdo. Manuel Porro Vizcarra

Materia: Derecho Laboral- Interpretación de la justa causa en el contexto de una reorganización empresarial según establece el Art. 2(e) y (f) de la Ley sobre Despido Injustificado.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| David R. Segarra Rivera<br><br>Recurrido<br><br>v.<br><br>International Shipping Agency, Inc.; Intership Tote, Inc./ Tote Maritime Puerto Rico, LLC; Puerto Rico Terminals, LLC y otros<br><br>Peticionarios | CC-2019-0193<br><br>Cons. con<br><br>CC-2019-0194 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 23 de marzo de 2022.

En esta ocasión tenemos la oportunidad de reiterar y aclarar nuestro precedente en <u>SLG Zapata-Rivera v. J.F. Montalvo</u>, *infra*, sobre la interpretación de la justa causa en el contexto de una reorganización empresarial según consignado en el Art. 2(e) y (f) de la *Ley Sobre Despido Injustificado* (Ley Núm. 80), *infra*.

Por los fundamentos que esbozamos a continuación, establecemos que el Art. 2(e) de la referida ley no exige que el ejercicio de acreditación *bona fide*, requerido para probar la existencia de un proceso o plan de reorganización empresarial, sea realizado de una **forma particular o específica.** De esta forma, basta con que el patrono acredite y satisfaga al juzgador de los hechos que la reorganización o reestructuración empresarial, en efecto, responde a una

decisión gerencial válida y no a un mero capricho o arbitrariedad por parte del patrono.

I

La génesis de esta controversia se remonta al 15 de julio de 2016, cuando la empresa International Shipping Agency, Inc. (Intership o compañía)[1] le entregó una carta de despido a treinta y seis (36) empleados de administración ⸺incluyendo a su presidente, el Sr. David R. Segarra Rivera (recurrido)⸺ y a toda la nómina de empleados unionados que trabajaban en las operaciones de la compañía.[2] Intership justificó la cesantía de estos empleados como resultado de una **reorganización** y **reducción de personal** *bona fide* de la compañía.

No conteste con esta determinación, el 31 de octubre de 2016, el señor Segarra Rivera, presentó una querella sobre despido injustificado, discrimen por edad, daños y perjuicios y violación a la Constitución de Puerto Rico en contra de Intership, Tote Maritime Puerto Rico, LLC (Tote)[3] y Puerto

---

[1] International Shipping Agency, Inc. es una corporación organizada y autorizada a hacer negocios en Puerto Rico que, hasta mediados de julio de 2016, se dedicaba al negocio de estiba y de terminal y manejaba la carga y descarga de embarcaciones, tanto domésticas como internacionales.

[2] *Carta de Terminación de Empleo,* Apéndice de la petición de certiorari, pág. 160.

[3] Tote Maritime Puerto Rico, LLC (antes Sea Star Line, LLC-PR Branch), es una compañía de responsabilidad limitada organizada bajo las leyes de Puerto Rico que transporta y lleva carga de Puerto Rico a Jacksonville, Florida.

Rico Terminals, LLC (PRT,[4] y junto a Intership y Tote, los peticionarios) y otros, bajo la *Ley de Procedimiento Sumario de Reclamaciones Laborales*,[5] ante el Tribunal de Primera Instancia (TPI).[6] Aquí, el recurrido esbozó que, hasta la fecha de su despido, ocupaba el puesto de presidente de la compañía desde el 1 de julio de 1980 y que la reorganización aludida fue un subterfugio de los peticionarios para despedirlo discriminatoriamente por razón de edad en violación de la Ley Núm. 80, *infra*, la Ley Núm. 100, *infra*, y la Constitución de Puerto Rico. Ello, para evadir sus obligaciones patronales, a fin de no pagarle la mesada requerida por ley. Además, adujo que, durante todo el tiempo pertinente a esta reclamación, Intership fue su patrono, ya sea porque la compañía continuó las operaciones o porque transfirió un negocio en marcha a Tote y a PRT, y por lo tanto estos últimos se convirtieron en patrono sucesor.[7] Asimismo, sostuvo que estas empresas son un único patrono, por contar con operaciones centralizadas, interrelacionadas de propiedad y operación común. Más aun, alegó que Intership nunca cesó sus operaciones, sino que continuó ofreciendo los mismos servicios a través de un proyecto conjunto o "joint

---

[4] Puerto Rico Terminals, LLC es una compañía de responsabilidad limitada organizada bajo las leyes del estado de Delaware y autorizada a hacer negocios en Puerto Rico.

[5] Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961(32 LPRA sec. 3118 *et seq.*).

[6] *Querella,* Apéndice de la petición de certiorari, pág. 1.

[7] Íd., pág. 2.

venture" (JV) y que, en lugar de proveer servicios de estiba, es decir, de carga y descarga de mercancía, el JV subcontrató esos servicios de SSA San Juan, Inc. (SSA).[8] Con relación a esto último, indicó que los empleados unionados que trabajaban en Intership pasaron a trabajar en SSA, para continuar ofreciendo los mismos servicios. Por otro lado, el recurrido añadió que la compañía ilícitamente consideró su edad al despedirlo pues, una vez cesantiado, nombró como nuevo presidente a la Sra. María I. Caraballo Gaud (señora Caraballo Gaud), directora de finanzas ("CFO") de la empresa, quien tenía aproximadamente treinta (30) años de edad menos que él y contaba con menor antigüedad que este en la compañía. Además, resaltó que, en una de las cartas de despido, Intership le expresó que había llegado el momento para que se acogiera a su retiro, aun cuando él no había expresado tal intención. Así, el recurrido reclamó el pago de la mesada contemplada en la Ley Núm. 80, *infra*, una indemnización por angustias mentales a raíz del presunto discrimen por edad, el pago de la doble penalidad impuesta por la Ley Núm. 100, *infra*, y una indemnización por los daños adicionales ocasionados por el supuesto despido ilegal y discriminatorio.[9]

---

[8] SSA San Juan, Inc. es una compañía de responsabilidad limitada, organizada bajo las leyes del estado de Delaware y autorizada a hacer negocios en Puerto Rico.

[9] El recurrido indicó que conforme al periodo durante el cual prestó servicios a Intership, esto es treinta y seis (36) años, tiene derecho a recibir por concepto de mesada la suma de un millón doscientos cuarenta

Por su parte, el 1 de noviembre de 2016, Intership presentó su *Contestación a la Querella*.[10] De igual forma hicieron Tote y PRT el 14 de noviembre de 2016.[11] Todas las empresas coquerelladas negaron las alegaciones en su contra y alegaron afirmativamente que el despido del recurrido estuvo justificado, toda vez que **se debió a una reorganización *bona fide*** de la compañía.[12] Añadió que, en aras de enfrentar los nuevos retos del mercado de estiba decidió **cambiar los servicios rendidos al público** por **razones económicas**.[13] Particularmente, sostuvieron que desde el 2012, Intership venía perdiendo varios de sus clientes principales, incluyendo al más importante, Tote, el cual representaba entre un 65% y 75% de su negocio.[14] Además, expresaron que

y nueve mil cuatrocientos veinte dólares con noventa y seis centavos (1,249,420.96), más el veinticinco por ciento (25%) por concepto de honorarios de abogados o de $312,355.24 para un total de un millón quinientos sesenta y un mil setecientos setenta y seis dólares con setenta centavos ($1,561,776.70). Por concepto de graves y severas angustias mentales a raíz del supuesto discrimen el recurrido solicitó una cantidad no menor de quinientos mil dólares ($500,000) y otra cantidad de quinientos mil dólares ($500,000) por la correspondiente penalidad de la ley. Por concepto de los salarios dejados de devengar desde la fecha de su despido solicita la cantidad no menor de ocho cientos mil dólares ($800,000).

[10] *Contestación a la Querella,* Apéndice de la petición de certiorari, págs. 8-19.

[11] *Contestación a la Querella,* Apéndice de la petición de certiorari, págs. 8-19, 32-39 y 40-47, respectivamente.

[12] Íd., págs. 15-17.

[13] *Informe Conjunto de Conferencia con Antelación al Juicio*, Apéndice de la petición de certiorari, págs. 67 y 68.

[14] Entre estos clientes se encontraban, Mediterranean Shipping Co. (MSC), American President, Inc. (API), y Tropical, entre otros. También, Intership expresó que implementó medidas para reducir y controlar sus costos y gastos, tales como las siguientes: reducir gastos de gasolina, eliminar gastos de Auto expreso, prohibir el "overtime", reducción de horas y de personal, limitar compras de materiales de oficina, evaluar inventarios, limitar el consumo de electricidad, revisión de beneficios marginales, reducción de salarios, reducción del "car allowance", revisión de productividad y de los recursos de seguridad. A la anterior

las actuaciones de Intership con relación al empleo del recurrido no fueron arbitrarias ni caprichosas sino que respondieron a razones legítimas, justificadas y relacionadas al buen y normal funcionamiento de la compañía. Específicamente, **acreditaron las razones de negocio para restructurar la oferta de servicios de la empresa** y, en consecuencia, la reducción de personal *bona fide.* En cuanto al recurrido, apuntalaron que sus responsabilidades como presidente desaparecieron ante la salida de Intership del negocio de estiba.[15] A su vez, anejaron prueba documental que sustentaba las razones económicas para tomar esa decisión, a saber: a) el *Sea Star line- PR Action Plan*, entre Intership y Tote (antes Sea Star Line);[16] b) el *Limited Liability Company Agreement of Puerto Rico Terminals* (JV);[17] c) el *Capital Contribution Agreement* y el *Asset and Liability Schedules*, entre Intership y PRT.[18] Así también, presentaron prueba documental que demostró **la merma de sus ingresos**

---

se le suma la pérdida del contrato de estiba más grande que tenía Intership con Tote. Véase, *Declaración Jurada*, Apéndice de la petición de certiorari, págs. 430-31. Véase, además, *Correo electrónico de 25 de septiembre de 2015*, Apéndice de la petición de certiorari, pág. 589. Véase, también, *Correo electrónico de 20 de junio de 2014*, Apéndice de la petición de certiorari, (CC-2019-0194, tomo 2) pág. 609; *Informe Conjunto de Conferencia con Antelación al Juicio*, Apéndice de la petición de certiorari, págs. 114 y 115; *Petición de certiorari*, pág. 6.

[15] *Contestación a la Querella,* Apéndice de la petición de certiorari, págs. 14-15.

[16] *Sea Star line- PR Action Plan, entre Intership y Tote* (antes Sea Star Line), Apéndice de la petición de certiorari, págs. 223-224.

[17] *Limited Liability Company Agreement of Puerto Rico Terminals*, Apéndice de la petición de certiorari, págs. 233-285.

[18] *Capital Contribution Agreement y el Asset and Liability Schedules*, Apéndice de la petición de certiorari, págs. 294-301.

**debido a la pérdida de sus clientes principales.**[19] Lo anterior, para **demostrar** que la peticionaria pasó por un proceso de reorganización corporativa *bona fide* desde el 2015, que culminó con la incorporación de PRT en el 2016. Finalmente, todas las empresas coquerelladas solicitaron la desestimación de la *Querella*.

Posterior al descubrimiento de prueba, tanto el recurrido, como Intership, PRT y Tote presentaron solicitudes de sentencias sumarias,[20] mociones en oposición a tales solicitudes, réplicas y dúplicas a las mismas ante el foro primario.

Luego de considerar los argumentos esgrimidos por las partes en los diferentes escritos, los documentos anejados a estos y las estipulaciones de hechos incluidas en el *Informe de Conferencia con Antelación al Juicio*,[21] el 18 de septiembre de 2018, **el TPI notificó una *Sentencia* en la que desestimó con perjuicio la reclamación del señor Segarra Rivera.**[22] En resumen, luego de establecer cincuenta (50) determinaciones

---

[19] Véase *Declaración Jurada*, Apéndice de la petición de certiorari, pág. 430. Véase, *Declaración Jurada*, Apéndice de la petición de certiorari, págs. 430-31. Véase, además, Correo electrónico de 25 de septiembre de 2015, Apéndice de la petición de certiorari, pág. 589. Véase, también, Correo electrónico de 20 de junio de 2014, Apéndice de la petición de certiorari (CC-2019-0194, tomo 2) pág. 609; *Informe Conjunto de Conferencia con Antelación al Juicio*, Apéndice de la petición de certiorari, págs. 114 y 115; Petición de certiorari, pág. 6.

[20] Véase Apéndice de la petición de certiorari, págs. 124-404; págs. 405-620 y 621-701, respectivamente.

[21] *Informe de Conferencia con Antelación al Juicio*, Apéndice de la petición de certiorari, págs. 48-123.

[22] *Sentencia D PE2016-0715*, Apéndice de la petición de certiorari, pág. 986.

de hechos sobre los cuales entendió que no había controversia sustancial, el TPI resolvió que la decisión de cesantear al recurrido formó parte de un plan de reorganización y restructuración de Intership, tras la creación del JV con Tote; reorganización que iba dirigida a mitigar la situación económica que enfrentaba Intership desde el 2014.[23] Además, añadió que, a raíz de la creación del JV, Intership perdió el noventa por ciento (90%) de la totalidad de sus negocios, lo que justificó la reducción sustancial de nómina. De esta forma, el foro primario concluyó que los cambios promovidos por Intership requirieron que se reenfocaran las operaciones de la empresa y se afianzara una nueva estructura gerencial que fuera más eficiente en las circunstancias despuntadas por el JV.

Insatisfecho, el 28 de septiembre de 2018, el señor Segarra Rivera recurrió mediante recurso de *Apelación* al Tribunal de Apelaciones (TA).[24] En síntesis, planteó que el TPI debió establecer determinaciones de hechos relacionadas al JV que, a su juicio, reflejaban un claro ánimo ilegal y discriminatorio. Por su parte, Intership presentó su alegato en oposición el 29 de octubre de 2018 y reafirmó que demostró

---

[23] Íd., pág. 1012.
[24] Aquí, el recurrido señaló los tres errores siguientes: (1) el TPI debió determinar que el *joint venture* constituyó un traspaso de negocio en marcha; (2) el TPI debió imponerle responsabilidad a las coquerelladas bajo la doctrina de patrono sucesor o en la alternativa bajo la doctrina de solo patrono, y, (3) el TPI debió establecer determinaciones de hechos relacionadas al *joint venture* que, a su juicio, reflejaban un claro ánimo ilegal y discriminatorio. *Apelación*, Apéndice de la petición de certiorari, págs. 1016-1047.

que el despido del señor Segarra Rivera fue justificado, toda vez que tal despido respondió a una reorganización *bona fide* y que el puesto de CFO no se le ofreció al recurrido porque este no tenía el conocimiento para ejercer funciones de contabilidad.[25] Por otro lado, las empresas Tote y PRT también presentaron su oposición y argumentaron que el foro primario actuó correctamente. Subrayaron que las empresas querelladas continuaron coexistiendo y que entre Intership, Tote y PRT no se ejecutó compraventa de negocio alguno, por lo que no era aplicable la doctrina de patrono sucesor ni la de traspaso de negocio en marcha.[26]

El 28 de febrero de 2019, el TA notificó una *Sentencia* en la que revocó el dictamen del TPI.[27] El foro apelativo intermedio entendió que existían hechos materiales en controversia.[28] Más aun, resolvió que, de la prueba presentada

---

[25] Además, Intership sostuvo que el propio señor Segarra Rivera reconoció que quien mejor podía hablar de los asuntos financieros de la corporación era la CFO, la señora Caraballo Gaud. *Alegato de la Apelada,* Apéndice de la petición de certiorari, págs. 1048-1080.

[26] *Alegato de las partes querelladas-Apeladas*, Apéndice de la petición de certiorari, pág. 1081.

[27] *Sentencia KLAN201801072,* Apéndice de la petición de certiorari, págs. 1114-1141.

[28] El TA concluyó que existían trece (13) hechos materiales que estaban en controversia, a saber:

(1) En qué fecha fue despedido el Sr. Segarra. A saber: en la reunión extraordinaria celebrada el 12 de mayo de 2016, previo al inicio de operaciones de la empresa conjunta, o el 15 de julio de 2016.

(2) Si el puesto de presidente fue eliminado o si fue fusionado.

(3) En qué fecha se formalizó la fusión o eliminación corporativa del puesto de presidente.

(4) La descripción oficial de los deberes adscritos al puesto de presidente antes y después del establecimiento de PRT.

(5) Qué labores realizaba el Sr. Segarra en calidad de presidente, que ahora no están incluidos en la clasificación del puesto.

por las partes, **no podía concluirse** que el despido del recurrido estuvo motivado por la aludida reorganización empresarial. Específicamente, indicó que, según surge de los documentos ante su consideración, Intership esbozó distintas razones para justificar el despido del señor Segarra Rivera y que, por lo tanto, la controversia ante su consideración no debió de haberse atendido sumariamente. De forma similar, determinó que Intership **no pudo articular cómo la reorganización en sus operaciones de estiba y terminal, así como un supuesto aumento en las tareas relacionadas a la contabilidad, requerían el despido del recurrido.** A la luz de esas circunstancias concluyó que, aunque la Ley Núm. 80, *infra*, permite al patrono una disminución de su plantilla laboral, debía configurarse un nexo causal entre las justificaciones aducidas conforme al Art. 2 de la Ley Núm. 80, *infra*, y el despido en controversia. Razonaron que la

---

(6) Si las funciones de la Sra. Caraballo (CFO), en calidad de presidenta, son las mismas que realizaba el Sr. Segarra en tal capacidad.

(7) Cuáles son las responsabilidades adicionales de contabilidad que la señora Caraballo comenzó a realizar, que no efectuaba previo a la creación de PRT.

(8) El vínculo entre la reorganización de las operaciones de estiba y terminal de Intership y el despido del Sr. Segarra.

(9) Qué porciento [sic.] del negocio representaba las operaciones de estiba y terminales cedidas por Intership a PRT.

(10) Si el despido del Sr. Segarra era necesario para la continuidad económica de la empresa.

(11) Si al Sr. Segarra le fue ofrecido, previo a su despido, un contrato de consultoría, y los términos del mismo.

(12) Las razones por las que Intership expresó querer continuar contando con la pericia del Sr. Segarra, a pesar de despedirlo por el fundamento de que sus funciones ya no serían necesarias.

(13) Qué insumo, si alguno, tenía Intership en la contratación de los empleados de PRT y en los asuntos administrativos de las empresas conjuntas. Íd., págs. 1139-40.

mera existencia de cambios tecnológicos, de reorganización o de una merma en la producción, entre otros, de por sí no justifican el despido de empleados.

No conteste con esa determinación, el 20 de marzo de 2019, tanto Intership como Tote y PRT presentaron los recursos de epígrafe ante nos. Por un lado, Intership en su recurso señaló los errores siguientes:

> Erró el honorable Tribunal de Apelaciones al revocar la sentencia sumaria del TPI en contravención con las disposiciones de la Regla 36 de Procedimiento Civil de Puerto Rico y su jurisprudencia interpretativa, al determinar que existían alegados hechos materiales en controversia carentes de prueba que los sustentara y al ignorar o tomar como inmateriales hechos relevantes a la controversia del caso.

> Erró el honorable Tribunal de Apelaciones al revocar la sentencia sumaria del TPI que concluyó que no existía controversia sobre hechos materiales y que conforme al artículo 2 de la Ley 80 el despido del recurrido fue uno justificado y no discriminatorio por edad.

Por su parte, Tote y PRT plantearon los errores siguientes:

> Erró el Tribunal de Apelaciones al determinar que tenía jurisdicción cuando Segarra presentó una apelación incompleta en el término de diez (10) días establecido en la Ley 2.

> Erró el Tribunal de Apelaciones al no desestimar la querella en contra de Tote y PRT cuando no existe un caso o controversia entre dichas partes.

> Erró el Tribunal de Apelaciones al determinar que existen hechos en controversia que impiden la desestimación del caso.

Luego de examinar los alegatos de todas las partes, y tras expedir y consolidar los recursos de autos, estamos en posición de resolver. Pasemos, pues, a exponer el marco jurídico aplicable.

## II.

### A. Sentencia Sumaria

En reiteradas ocasiones hemos establecido que la *Moción de Sentencia Sumaria* es un mecanismo procesal que provee nuestro ordenamiento para resolver controversias que no requieren la celebración de un juicio.[29] Mediante este mecanismo se facilita la solución justa, rápida y económica de los litigios civiles cuando estos no presentan controversias genuinas de hechos materiales.[30] Desde el 1971 hemos señalado que la sentencia sumaria "usada con sabio discernimiento, […] es un valioso mecanismo procesal para descongestionar los calendarios judiciales".[31]

Para que la parte demandante pueda prevalecer por la vía sumaria es imprescindible la presentación de prueba incontrovertida sobre todos los elementos indispensables de su causa de acción. La sentencia sumaria procede, incluso, ante la existencia de hechos en controversia "si la parte

---

[29] Véase Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V.; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Véase, además, *Ramos Pérez v. Univisión de PR,* 178 DPR 200, 213 (2010); *Quest Diagnostic v. Mun. San Juan*, 175 DPR 994 (2009).

[30] *Ramos Pérez v. Univisión* de PR, supra, pág. 214.
[31] *Padín v. Rosse*, 100 DPR 259, 262 (1971).

que la promueve puede demostrar, que aun cuando de las alegaciones surja una aparente controversia, en el fondo, al profundizar hasta la sustancia probatoria, esa controversia no existe".[32] De conformidad con la Regla 36.3 de Procedimiento Civil,[33] "procede dictar sentencia sumaria si las alegaciones, deposiciones, y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y además, si el derecho aplicable así lo justifica".[34] Anteriormente hemos aclarado que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".[35]

Por otro lado, esta Curia ha sido enfática en reiterar que no es aconsejable usar el mecanismo de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia del alegado discriminen.[36] Los hechos que surgen de los casos de alegado discrimen en el empleo, deben ser "rigurosamente

---

[32] R. Hernández Colón, <u>Práctica jurídica en Puerto Rico: Derecho Procesal Civil</u>, 6ta ed., San Juan, pág. 315.

[33] R.P. Civ. 36.3, 32 LPRA Ap. V. (2010).

[34] *Roldán Flores v. M. Cuebas*, 199 DPR 664, 676 (2018).

[35] *Ramos Pérez v. Univisión*, supra, (citando a J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, San Juan, Publicaciones JTS, 2000, T. I, pág. 609).

[36] *Casto Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994).

examinados por los tribunales con un análisis detenido y cuidadoso".[37] Especialmente en casos de alto interés público, como lo es el discrimen en el empleo, hemos señalado "la necesidad de establecer la intención del patrono, por lo que el factor credibilidad juega un papel importante en el resultado de la reclamación. Estos elementos generalmente no se pueden definir con certeza hasta que el juzgador de los hechos tenga oportunidad de ver a los testigos en el juicio".[38] **Sin embargo, el mero hecho de que un pleito involucre controversias complejas no impide que este se pueda resolver sumariamente si en realidad no existen hechos materiales en controversia.**[39]

**B. Estándar de Revisión Apelativa**

Al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria hemos establecido que el foro intermedio apelativo solo puede: (1) considerar los documentos que se presentaron ante el foro primario ──cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías──, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de

---

[37] Íd.

[38] Íd., pág. 306.

[39] *González v. M. Cuebas*, 193 DPR 100, 120-21 (2015).

forma correcta.[40] Por esta forma, "los foros apelativos se encuentran en la misma posición que los tribunales de distrito y utilizan los mismos criterios para evaluarlas".[41]

En particular, el estándar a seguir en nuestra jurisdicción al momento de revisar denegatorias o concesiones de mociones de sentencia sumaria, es el siguiente:

(1) El Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. Esta revisión es una *de novo*;

(2) El Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) El Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y

(4) Si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[42]

---

[40] Íd., pág. 114 (citando a *Vera v. Dr. Bravo*, 161 DPR 308 (2004)).
[41] Íd., pág. 116 (citando a 10A Wright & Miller, *Federal Practice and Procedure: Civil 3d*, Sec. 2716, pág. 273).
[42] Íd., págs. 118-19.

C. **Ley Núm. 80: Despido Injustificado**

**Nuestro ordenamiento laboral no prohíbe el despido de un empleado.** Más bien protege "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo […] a la vez que otorg[a] unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado".[43] Es decir, nuestro ordenamiento laboral busca proteger los derechos de los trabajadores con el fin de establecer un balance en las relaciones entre patronos y empleados.[44] Por ello, la *Ley de Indemnización por Despido sin Justa Causa*, mejor conocida como **Ley Núm. 80, *supra*, tiene como propósito proteger el derecho de los trabajadores ante acciones "arbitrarias y caprichosas" de los patronos.** En ese sentido, esta normativa le impone el pago de una indemnización conocida como "mesada" al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado.[45]

---

[43] Exposición de Motivos, Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, 1976 LPR 267, 268. Véase, además: *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455 (2010), citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001).

[44] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 903 (2011).

[45] La compensación de la mesada consiste en:

(a) el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo

Ahora bien, la Ley Núm. 80, *supra*, no establece específicamente qué constituye un despido injustificado. Sin embargo, menciona varios escenarios o circunstancias que liberan al patrono de responsabilidad. Algunas de estas circunstancias están basadas en conducta atribuible al empleado, mientras que otras responden al curso decisorio de la gerencia empresarial, como sería el cierre, **reorganización** o reducción en la producción, ventas o ganancias.

En lo pertinente, los incisos (d), (e) y (f) del Art. 2 de la Ley Núm. 80, *supra,* incluyen las circunstancias que afectan el buen y normal funcionamiento de una empresa y que, por lo tanto, justifican el despido de empleados. Específicamente, los incisos antes mencionados consideran como justa causa para el despido de empleados las circunstancias siguientes:

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de **reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y **los cambios en los servicios rendidos al público.**

---

correspondiente a seis (6) meses si el despido ocurre luego de los quince (15) años de servicio;

(b) una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres (3) semanas por cada año de servicio, luego de haber completado quince (15) años o más de servicio. Ley Núm. 80 del 30 de mayo de 1976 (29 LPRA sec. 185). *Indulac v. Central General*, 2021 TSPR 78.

(f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias**, anticipadas o que prevalecen al ocurrir el despido **o con el propósito de aumentar la competitividad o productividad del establecimiento**. (Énfasis suplido).[46]

De esta forma, con la aprobación de la Ley Núm. 80, *supra*, el legislador reconoció que pueden surgir circunstancias en el funcionamiento y manejo de los negocios que ameriten despedir su empleomanía por justa causa.[47] Es decir, las circunstancias previstas en estos tres incisos giran en torno a las actuaciones del patrono sobre la administración de su negocio, y principalmente ocurren por razones de índole económica que enfrenta la operación diaria del mismo. Así, el Art. 2 de dicha ley reconoce que no se considerará con justa causa aquel despido que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. Por lo tanto, las empresas pueden cesantear a sus empleados sin la obligación de pagar la correspondiente indemnización cuando enfrentan alguna de las precitadas circunstancias. La única limitación que impone la ley en este tipo de casos es la de

---

[46] Resaltamos que previo a la aprobación de la Ley Núm. 4-2017, mejor conocida como la *Ley de transformación y Flexibilidad Laboral*, el inciso (f) leía de la forma siguiente: "(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido". (29 LPRA sec. 185b).

[47] Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. del S. 1112, 7ma Asamblea Legislativa, 3ra Sesión Ordinaria, 23 de abril de 1975.

"retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos".[48] Sin embargo, la retención por antigüedad tiene que ser dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas.

De particular relevancia al caso de autos, este Tribunal en una sola ocasión ha tenido la oportunidad de expresarse específicamente sobre las circunstancias que constituyen "justa causa" para el despido de empleados por razones de índole empresarial a la luz del Art. 2 incisos (e) y (f). En SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013), concluimos que un patrono queda exento de pagar la indemnización fijada por la Ley Núm. 80, *supra*, si la decisión del despido se toma como parte de una **reorganización empresarial** según dispone el Art. 2(e) de la Ley Núm. 80, *supra*.[49] Específicamente, aclaramos que tal **reorganización debe ser *bona fide***, es decir, **no puede ser producto del mero capricho del patrono**, sino que debe ser producto de consideraciones relacionadas **al manejo de la empresa**. Concluimos que siempre y cuando responda a una reestructuración *bona fide*, el patrono puede "modificar su

---

[48] Art. 3 de la Ley Núm. 80 del 30 de mayo de 1976 (29 LPRA sec. 185c).

[49] *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 426.

forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad".[50] Así, sostuvimos que los cambios en la empresa pueden acarrear el despido y el reclutamiento simultáneo de personal debido a que "las reformas en ocasiones **exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas**". (Énfasis suplido).[51] No obstante, indicamos que **para que el patrono pueda justificar el despido al amparo del inciso (e) ⸺por reorganización⸺ debe "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad**". (Énfasis suplido).[52]

Por otra parte, en relación con el Art. 2(f) de la Ley Núm. 80, *supra*, esbozamos que "la situación económica provocada por **la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos tales como disminuir la plantilla laboral**". (Énfasis suplido).[53] A su vez, explicamos

---

[50] Íd.
[51] Íd., págs. 426-427.
[52] Íd. pág. 427.
[53] Íd.

que, bajo este inciso, no "toda merma en ventas o ganancias se tradu[ce] en justa causa para un despido. Por el contrario, la misma aplicará únicamente a aquellas situaciones en las cuales la aludida **disminución sea una sustancial** al punto que **atente contra la continuidad de la empresa**". (Énfasis suplido).[54] Así pues, si el patrono pretende justificar el despido al amparo del inciso 2(f) ──por disminución de ganancias── **debe presentar evidencia que acredite "la alegada disminución en la producción, ventas o ganancias".**[55] En ese sentido, indicamos que el patrono debe establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido.

A modo ilustrativo, resaltamos que recientemente nuestra Asamblea Legislativa promulgó la Ley Núm. 4-2017, mejor conocida como la *Ley de Transformación y Flexibilidad Laboral*, la cual enmendó la Ley Núm. 80, *supra*, para entre otras cosas, ampliar los criterios para llevar a cabo una reorganización o reducción de personal.[56] Ello, con el fin de añadir una nueva circunstancia al inciso (f) que permitiera a la empresa una reducción de empleados con el propósito de

---

[54] Íd.

[55] Íd.

[56] Según expresó el legislador en la *Exposición de Motivos* de esta ley, el "objetivo principal con esta legislación es hacer de Puerto Rico una jurisdicción más competitiva, sin menoscabar los derechos esenciales de los trabajadores. Esta Ley hace un justo balance entre las necesidades del sector empresarial y las de los empleados, poniendo en relieve nuestra deferencia y respeto hacia el sector laboral de Puerto rico". Exposición de Motivos, Ley de transformación y Flexibilidad Laboral, Ley Núm. 4-2017 (29 LPRA sec. 121).

aumentar    la    competitividad    o    productividad    del establecimiento.[57]

Por otro lado, es importante señalar que como parte del estado de derecho previo a la aprobación de la Ley Núm. 4-2017,[58] cuando un empleado instaba un pleito al amparo de la Ley Núm. 80, *supra*, se activaba la presunción de que el despido fue injustificado y recaía sobre el patrono la obligación de rebatirla.[59] Ahora bien, esa presunción se estableció para facilitar al empleado probar su caso, **más no relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones.**

## D.  Ley 100: discrimen por razón de edad en el empleo

Nuestra Constitución establece como derecho fundamental la protección de toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar.[60] Igualmente, se prohíbe el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o

---

[57] Sin embargo, esta enmienda es de aplicación prospectiva a la vigencia de esta ley, por lo que no era el derecho vigente al suscitarse la presente controversia. No obstante, de la misma se desprende el ánimo del legislador en balancear la relación obrero-patronal. Ley Núm. 4-2017, *supra*.

[58] El Art. 1.2 establece que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según los dispuesto expresamente en los Artículos de ésta". Ley Núm. 4-2017, *supra*.

[59] Como el despido del recurrido en el caso de marras ocurrió previo a la aprobación de la Ley Núm. 4-2017, *supra*, es de aplicación la presunción que establecía la Ley Núm. 80, *supra*.

[60] Art. II, Sec. 8, Const. P.R. LPRA, Tomo 1, ed. 2008.

religiosas.[61] Por ello, en reiteradas ocasiones hemos esbozado que la inviolabilidad de la dignidad del ser humano es el principio cardinal sobre el cual se cimentan los derechos fundamentales de toda persona.[62] En virtud de nuestra Carta Magna, la Asamblea Legislativa aprobó uno de los estatutos principales para la protección del trabajador puertorriqueño, a saber, la Ley Núm. 100, según enmendada, también conocida como *Ley contra el discrimen en el empleo del 1959*.[63]

La Ley Núm. 100, *supra*, establece una causa de acción civil por daños a favor de toda persona que hubiese sido despedida o de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social.[64] En consecuencia, **la Ley Núm. 100, *supra*, prohíbe y penaliza el discrimen en el empleo.**

Por otra parte, previo a la reforma laboral introducida por la Ley Núm. 4-2017, *supra*, el lenguaje original del Art. 3 de la Ley Núm. 100, *supra*, establecía una presunción de discrimen.[65] A tales fines, el mencionado artículo disponía

---

[61] Art. II sec. 1, Const. P.R., *supra*.

[62] Art. II sec. 1, Const. P.R., *supra*. Véase, además: *Ortíz González v. Burger King de Puerto Rico*, 189 DPR 1 (2013); U.P.R. Aguadilla v. Lorenzo Hernández, 184 DPR 1001 (2012).

[63] Ley Núm. 100 de 30 de junio de 1959 (29 LPRA sec. 148). Véase, además: *Díaz Fontánez, v. Wyndham Hotel Corp.*, supra, pág. 380; *García Pagán v. Shiley Caribbean, Inc.*, 122 DPR 193, 198 (1988).

[64] *Jusino et als. v. Walgreens*, supra, pág. 574; *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485 (1985).

[65] Ley Núm. 4-2017, *supra*.

que "[s]e presumirá que cualquiera de los actos mencionados en las secciones precedentes fue cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible".[66] Así en <u>López Fantauzzi v. 100%</u> <u>Natural</u>, 181 DPR 92, 124 (2011)[67] este Tribunal resumió la norma expuesta en <u>Díaz v. Wyndham Hotel Corp.</u>, 155 DPR 364 (2001)[68] sobre el proceso probatorio de una reclamación incoada conjuntamente al amparo de la Ley Núm. 80, *supra*, y la Ley Núm. 100, *supra*, al establecer lo siguiente:

> En resumen, en toda causa de acción instada simultáneamente al amparo de la Ley Núm. 80, *supra*, y de la Ley Núm. 100, *supra*, el empleado, antes de articular su caso *prima facie* por la modalidad de discrimen que arguya, **deberá *alegar* en su demanda que su despido fue injustificado.** Una vez alegue esto, debe proceder a establecer su caso *prima facie* por discrimen; entiéndase, (1) que fue despedido, (2) **sin justa causa** y (3) que está ubicado dentro de la modalidad de discrimen bajo la cual reclama. Luego que el empleado establezca su caso *prima facie* por discrimen, el patrono puede atacar la presunción activada de tres maneras, a saber: (1) derrotar el hecho básico —la ausencia de justa causa— (2) destruir el hecho presumido —que el despido fue por causa de motivos discriminatorios— o (3) destruir el hecho básico y el presumido a la vez. Íd., pág. 390. Finalmente, si el patrono logra derrotar la presunción de discrimen según las alternativas reseñadas, entonces el empleado deberá presentar prueba dirigida a establecer la existencia del discrimen, sin contar con el beneficio de la presunción. (Énfasis suplido) (Citas omitidas).[69]

---

[66] Art. 3, Ley Núm. 100, *supra*.
[67] *López Fantauzzi v. 100% Natural*, 181 DPR 92, 124 (2011).
[68] *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001).
[69] *López Fantauzzi v. 100% Natural*, supra, pág. 124.

Por lo tanto, **cuando un patrono despide a un empleado mediando justa causa, no puede ser responsable de discrimen al amparo de la Ley Núm. 100,** *supra*.[70]

Es importante reiterar que en los casos de despido discriminatorio por edad, la parte "demandante tiene que presentar prueba en el primer turno, que tienda a establecer, por ejemplo, que (i) pertenece a la clase protegida por el estatuto, a saber, su edad; o (ii) que estaba cualificado para ejercer el puesto que ocupaba; o (iii) que fue despedido, o (iv) que fue sustituido por una persona más joven, esto es, algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama".[71] Una vez la parte demandante establece su caso prima facie por discrimen por razón de edad, el patrono puede rebatir la presunción activada de tres maneras, a saber: (1) derrotar el hecho básico ⸺la ausencia de justa causa⸺ (2) derrotar el hecho presumido ⸺que el despido fue por causa de motivos discriminatorios⸺ o (3) destruir el hecho básico y el presumido a la vez.[72] Aun en caso de haber un despido sin justa causa, el patrono también puede presentar prueba que demuestre que el despido no fue discriminatorio.[73] Por ello, en López Fantauzzi v. Natural, *supra*, dictaminamos que la

---

[70] *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 73 (2008).
[71] *Díaz v. Wyndham Hotel Corp.*, supra, págs. 389 y 390.
[72] Íd., pág. 390.
[73] *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754, 775 (2000).

forma más certera y conveniente de rebatir la presunción del discrimen es que el demandado esboce una explicación razonable, que, de ser creída por el tribunal, sería suficiente para justificar el despido.[74] Ahora bien, el patrono no tiene que presentar una explicación razonable para el acto perjudicial. Para rebatir la presunción basta que el patrono pruebe, incluso con evidencia circunstancial, que la razón para tal acto no fue discriminatoria.[75] Por lo tanto, si el patrono logra derrotar la presunción de discrimen según las alternativas reseñadas, entonces el empleado deberá presentar prueba dirigida a establecer la existencia del discrimen, sin contar con el beneficio de la presunción.

Una vez presentada la totalidad de la prueba, si "queda demostrado que no hubo ánimo o intención discriminatoria en el despido, pero el demandado […] no probó la justa causa, el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, **exclusivamente**, a los remedios establecidos en la Ley Núm. 80". (Énfasis suplido).[76] Cabe destacar, que recientemente aclaramos que cuando haya concurrencia de acciones entre la Ley Núm. 80, *supra*, y la Ley Núm. 100, *supra*, "sólo procederá aquella indemnización estatutaria que ofrezca una mayor compensación al obrero […]. De manera que, ante una reclamación al amparo de un precepto

---

[74] *Benitez v. Molinos De P.R.*, 114 DPR 42, 53 (1983).

[75] *Naiy Ibáñez v. Molinos de Puerto Rico,* 114 DPR 42, 53 (1983).

[76] *Fontánez v. Wyndham Hotel,* 155 DPR 364, 391 (2001).

legal como la Ley 100, la mayor indemnización otorgada en daños es con inclusión de la doble penalidad que la legislación social impone".[77]

E.   **Patrono sucesor**

La doctrina de patrono sucesor proviene del derecho común estadounidense y se incorporó a nuestro ordenamiento jurídico mediante jurisprudencia.[78] Su aplicación ocurre en el contexto de una venta o transferencia de activos o reorganización de un negocio, siempre que haya una similitud sustancial en la operación y una continuidad sustancial en la identidad de la empresa, antes y después del cambio.[79] El único propósito de esta doctrina **es responsabilizar al nuevo patrono por las obligaciones laborales o actos ilegales del patrono anterior**.[80] Este Tribunal ha resuelto que, para determinar la existencia de esa similitud y continuidad, se deben considerar los factores siguientes: (1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta o instalación para las operaciones; (3) el empleo de la misma, o sustancialmente la misma, fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo y maquinaria, y el empleo de los mismos métodos

---

[77] *Santiago Ortiz v. Real Legacy Assurance Co.*, 2021 TSPR 12, 20.

[78] *Roldán Flores v. M. Cuebas*, supra, págs. 681 y 682.

[79] Íd.

[80] Íd., pág. 682 (citando a *Shaffer v. Mitchell Transport, Inc.*, 635 F.2d 261, 265-266 (3er Cir. 1980)).

de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre[,] y (8) la operación del negocio durante el período de transición.[81] **No obstante, ninguno de esos criterios es de por sí solo determinante.**

Ahora bien, debido a que el único propósito de esta doctrina es responsabilizar al nuevo patrono por las obligaciones laborales o los actos ilegales del patrono anterior, "los tribunales deben, primero, identificar la existencia de una obligación laboral o un acto ilegal imputable al patrono anterior. Una vez establezcan esto, podrán examinar si aplica la doctrina de Patrono Sucesor. **Nunca antes**". (Énfasis omitido).[82] Por tanto, **esta doctrina no aplica cuando se logra establecer que el despido realizado por el patrono anterior fue justificado.** (Énfasis suplido).[83]

## F.   Traspaso de Negocio en Marcha

Un negocio en marcha es "aquel que se mantiene operando de forma continua y con la expectativa de seguir funcionando indefinidamente".[84] Resulta ilustrativo que, mediante el Art 4.14 de la Ley 4-2017, *supra*, la Asamblea Legislativa añadió el Art. 14 a la Ley Núm. 80, *supra*, para entre otras cosas, definir expresamente el traspaso de negocio en marcha. En lo

---

[81] Íd.

[82] Íd. págs. 682-683.

[83] Íd.

[84] *Adventist Health v. Mercado,* 171 DPR 255, 266 (2007); *Montalbán v. Rodríguez,* 161 DPR 411 (2004).

pertinente, el Art. 14(i) lo define de la manera siguiente:

[…]**aquella compraventa de una empresa o negocio**, mediante la cual un patrono vende a otro patrono una parte sustancial de los activos y/o pasivos del negocio, sin interrupción o cese en las operaciones del mismo por más de seis (6) meses y se continúa operando el mismo tipo de negocio en el mismo establecimiento, o en uno distinto, con básicamente el mismo equipo, maquinaria e inventario, produciendo básicamente los mismos productos y/o prestando los mismos servicios, reteniendo el mismo nombre del negocio y marcas comerciales o un nombre similar, siempre y cuando la mayoría de los empleados que laboran en el negocio en cualquier momento durante los seis (6) meses siguientes al traspaso trabajaban para el patrono vendedor al ocurrir el traspaso del negocio. (Énfasis suplido).[85]

Este artículo "establece un esquema de dos pasos: (1) se tiene que determinar si hubo un traspaso de un negocio en marcha y (2) se requiere determinar cuál dueño de negocio o patrono responde por la mesada que corresponde a los empleados".[86] El referido artículo fue añadido a la Ley Núm. 80, *supra*, para aclarar la verdadera intención respecto al significado del traspaso de un negocio en marcha: la compraventa. La compraventa es "el contrato por el que una parte transmite o se obliga a transmitir la propiedad de un objeto a la otra, **a cambio de un precio en dinero**". (Énfasis suplido).[87]

De igual forma, el Art. 6 de la Ley Núm. 80, *supra*, contemplaba la figura del traspaso de negocio en marcha al

---

[85] Art. 14 de la Ley Núm. 4-2017 (29 LPRA sec. 185(i)).
[86] Guías para la Interpretación de la Legislación de Puerto Rico, Departamento del Trabajo y Recursos Humanos, pág. 146.
[87] J. Puig Brutau, *Compendio de Derecho Civil*, 3ra ed, Barcelona, Bosch, 1997, Vol. II, pág. 353.

disponer que:

**En el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños. En caso de que el nuevo adquirente opte por no continuar con los servicios de todos o algunos de los empleados y no advenga en su consecuencia patrono de éstos, el anterior patrono responderá por la indemnización provista por las secs. 185a a 185m de este título** el comprador deberá retener la cantidad correspondiente del precio de venta convenido respecto al negocio. En caso de que los despida sin justa causa después del traspaso, el nuevo dueño responderá por cualquier beneficio que bajo las secs. 185a a 185m de este título pueda tener el empleado que quede cesante, estableciéndose además un gravamen sobre el negocio vendido para responder del monto de la reclamación. (Énfasis Suplido).[88]

El mencionado Art. 6 no aplica antes de efectuarse el traspaso del negocio en marcha.[89] Hemos expresado que "la responsabilidad que se le ha de imponer al patrono sucesor depende de los hechos particulares del pleito en cuestión. Las obligaciones que se atribuirán al nuevo patrono se determinan caso a caso, con arreglo a las circunstancias particulares de cada cual".[90]

**G.  Único Patrono**

La doctrina de único patrono o solo patrono fue desarrollada jurisprudencialmente por los tribunales

---

[88] Art. 6, Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185f).

[89] *Piñeiro v. Int'l Air Servs.*, 140 DPR 343, 348 (1996).

[90] Íd. págs. 351 y 352 (citando a *Bruno López v. Motorplan Inc.*, 134 DPR 111 (1993)).

federales y la Junta Nacional de Relaciones del Trabajo para proteger los derechos de los obreros.[91] Esta doctrina cobra relevancia generalmente cuando se trata de compañías que coexisten, mientras que las doctrinas de traspaso de negocio en marcha y la del patrono sucesor se utilizan cuando una compañía sustituye a otra. La referida doctrina aplica cuando dos o más patronos cumplen los criterios siguientes: (1) operaciones interrelacionadas; (2) control centralizado de las relaciones laborales; (3) administración común, y (4) propiedad común.[92] Aunque **ninguno de estos cuatro criterios es por sí solo determinante, tampoco es necesario que concurran todos.** En ese sentido, "la determinación es objetiva, se examinan los cuatro criterios antes mencionados para determinar si existe el control general de los asuntos críticos en los niveles de política laboral necesario".[93] Reiteramos que "[l]o **fundamental** es determinar si existe un control general de los asuntos críticos en los niveles de política laboral de las compañías".[94] El tribunal deberá realizar un análisis de todas las circunstancias del caso para concluir si varias entidades se pueden o no considerar un único patrono. Por ejemplo, un mero cambio de nombre o aparente control no relevan de responsabilidad,[95] y si el

---

[91] *Rodríguez Román v. Banco Gubernamental de Fomento*, 151 DPR 383, 397 (2000).

[92] *Junta v. Asoc. Playa Azul I*, 117 DPR 20, 30 (1986).

[93] Íd. pág. 31.

[94] Íd.

[95] *Southport Co. v. N.L.R.B.*, 315 U.S. 100 (1942).

sucesor es un instrumento con el que se trata de evadir una orden, o participa en las prácticas ilícitas, también responde.[96] Así, "[c]uando las operaciones de dos corporaciones están integradas y la misma persona controla la política laboral de ambas corporaciones, éstas pueden considerarse como un solo patrono".[97]

### III.

En el caso ante nuestra consideración, ambos recursos presentados por los peticionarios solicitan que determinemos si el Tribunal Apelativo erró al revocar el dictamen sumario emitido por el TPI. Examinada detenidamente la robusta prueba que obra en el expediente de autos, contestamos en la afirmativa. Veamos.

En primer lugar, Intership sostiene que el Tribunal de Apelaciones erró en su determinación al desvirtuar la aplicación del remedio de sentencia sumaria, al determinar que existía controversia sobre hechos que no eran materiales para resolver la controversia planteada, al esgrimir controversias inexistentes de hechos, y al alterar la norma de interpretación respecto al despido por reorganización, eliminación y fusión de puestos en una empresa. En segundo lugar, arguye que el TA erró en su aplicación de la doctrina establecida en SLG Zapata v. JF Montalvo y de las causales

---

[96] *Regal Knitwear Co. v. Board*, 324 U.S. 9 (1945).
[97] *Junta v. Club Náutico de San Juan*, 97 DPR 386, 400 (1969).

establecidas en el Art. 2(e) de la Ley Núm. 80, *supra*, que justifican la terminación de empleo en casos de reorganización de las operaciones de un negocio.

En oposición al recurso presentado por Intership, el señor Segarra Rivera nos solicita que declaremos no ha lugar al mismo y en consecuencia confirmemos al foro intermedio. En síntesis, el recurrido sostiene que las operaciones de terminal y estiba de Intership nunca se discontinuaron pues, al pasar el noventa por ciento (90%) de las operaciones a PRT nunca hubo interrupción del negocio y en vez hubo un traspaso de este. Específicamente argumenta que, se configuran los elementos de un traspaso de negocio en marcha ya que el "joint venture", nombrado PRT, conllevó la continuidad y existencia de similaridad sustancial de Intership. En la alternativa, arguye que debemos aplicar la doctrina de patrono sucesor o la de único patrono. También aduce que **no hay evidencia** para concluir que la constitución del JV representa una reorganización y que Intership pretende crear un subterfugio para despojar al señor Segarra Rivera de su derecho a la mesada. Tomando como cierta la alegación de reorganización empresarial de Intership, el recurrido argumenta que, la empresa no siguió el orden de retención establecido en la Ley Núm. 80, *supra*, al despedirlo y que el puesto de presidente lo pasó a ocupar una empleada de menor edad.

Así las cosas, atenderemos por separado los dos planteamientos de error señalados por Intership en las secciones siguientes:

**A.**

En el presente caso, el foro intermedio revocó la determinación del TPI tras concluir que existían controversias de hechos materiales que debían dilucidarse mediante la celebración de un juicio en su fondo según estipula la Regla 36 de Procedimiento Civil. Razonó que la prueba presentada "lejos de arrojar luz, resaltan las incongruencias esbozadas para justificar el despido del Sr. Segarra".[98] No obstante, consideramos que los hechos en controversia identificados por el TA en realidad **no están en controversia o resultan inmateriales para la adjudicación del caso de epígrafe**. Específicamente, de un análisis de los propios hechos incontrovertidos identificados por el tribunal intermedio se desprende que no existe controversia material sobre el despido del recurrido porque el mismo resultó de una reorganización *bona fide*. La prueba testifical y documental presentada mediante deposiciones, declaraciones juradas y escritos de negocio, sostuvieron que la reorganización empresarial, en efecto, se debió al cambio de servicios rendidos al público en respuesta a la merma real

---

[98] *Sentencia KLAN201801072,* Apéndice de la petición de certiorari, pág. 1133.

en ganancias y a la crisis económica que sufrió la compañía, haciendo esta reorganización una *bona fide*.[99]

De entrada, analizamos y dividimos los presuntos hechos materiales en controversia expuestos por el TA en tres categorías.[100]

En la primera categoría, se encuentran los presuntos hechos materiales en controversia enumerados por el TA del primero al tercero, y relacionados a la fecha de despido del recurrido y la fusión entre el puesto de presidente y CFO. Comprobamos que, el recurrido recibió la carta de despido el 15 de julio de 2016, cual le notificó formalmente que su despido era efectivo desde esa fecha y ocurrió por motivo de reorganización empresarial.[101] Por ende, esta carta es suficiente para determinar la fecha de despido del recurrido, independientemente de que se le haya informado tal fecha con anterioridad. Así, al no estar en controversia lo anterior, este hecho resultaría inmaterial toda vez que la fecha de constitución del JV ocurrió el 23 de marzo de 2016 previo al despido del señor Segarra Rivera. De manera similar, al terminar el negocio de estiba, la empresa eliminó el puesto de presidente y reasignó las pocas funciones remanentes del

---

[99] Véase *Listado de los Exhibits*, Apéndice de la petición de certiorari, pág. 157. Véase también, Apéndice de la petición de certiorari, págs. 575 y 576.

[100] Para ver los hechos materiales presuntamente en controversia expuestos por el TA, véase el escolio número 28 de esta opinión.

[101] *Carta de Terminación de Empleo,* Apéndice de la petición de certiorari, pág. 160.

puesto al del CFO.[102] El propio TA, al igual que el TPI, determinó que el remanente de las funciones del presidente fueron consolidadas en el puesto de CFO, por lo que el puesto de presidente ya no tenía las mismas funciones.[103] A su vez, el TA determinó como hecho no controvertido que el 19 de julio de 2016, la señora Caraballo Gaud comenzó a fungir como presidenta, hecho que por sí solo refleja la fecha cuando se formalizó la fusión del puesto de presidente con el de CFO. Por lo tanto, ninguno de estos hechos estaba en controversia, ni requerían un juicio en su fondo para dilucidar esta presunta controversia.

En la segunda categoría, se encuentran los hechos enumerados del cuarto al séptimo, relacionados a la presunta controversia en cuanto a la descripción de deberes entre los puestos de Presidente y CFO. No obstante, de una lectura de la *Deposición del recurrido*[104] como de la *Declaración Jurada* de la señora Caraballo Gaud se desprenden estas funciones.[105] Además, según estipularon las partes en el *Informe Conjunto*

---

[102] Los despidos efectuados por Intership fueron de empleados que ocupaban posiciones únicas y ya no tendría esas responsabilidades luego de la creación del JV. *Declaración Jurada*, Apéndice de la petición de certiorari, pág. 433.

[103] Todos los hechos antes expresados fueron sustentados con la Declaración Jurada de la señora Caraballo Gaud, del señor Carlos Álvarez y fragmentos de la deposición del señor Segarra Rivera. Declaración Jurada de la señora Caraballo Gaud, Apéndice de la petición de certiorari, págs. 430-434; *Transcripción de la Deposición del Señor* Carlos Álvarez*, Apéndice de la petición de certiorari, págs. 376-396; Transcripción de la Deposición del Señor David Segarra, Apéndice de la petición de certiorari, págs. 435-489.

[104] *Transcripción de la Deposición del Señor David Segarra,* Apéndice de la petición de certiorari, págs. 435-489, 481.

[105] *Declaración Jurada de la señora Caraballo Gaud*, Apéndice de la petición *de certiorari, págs. 430-434.*

*de Conferencia con Antelación al Juicio,* la función principal del señor Segarra Rivera era de atraer y retener clientes vinculados al negocio de estiba,[106] distinto a las funciones que realizaba la CFO que versaban principalmente sobre la supervisión de la contabilidad y las finanzas de la compañía, entre otros.[107] En ese sentido, no entendemos la determinación del foro intermedio al concluir que estos hechos estaban en controversia, pues de una lectura somera de la prueba presentada se puede colegir que la alegada controversia es irreal.

Por último, en la tercera categoría, se encuentran los hechos materiales enumerados del octavo al decimotercero que, presuntamente, el TA concluyó que estaban en controversia. En síntesis, estos tratan sobre el vínculo entre la reorganización de las operaciones de estiba y terminal de Intership y el despido del señor Segarra Rivera. Conforme a la prueba presentada por los peticionarios, desde el 2012 Intership enfrentaba una pérdida de clientes sustancial que entre los años 2014-2015 los llevó a tomar medidas drásticas para reducir y controlar gastos de negocio,[108] medidas que

---

[106] Véase, *Informe Conjunto de Conferencia con Antelación al Juicio,* Apéndice de la petición de certiorari, pág. 59.

[107] *Declaración Jurada de la señora Caraballo Gaud*, Apéndice de la petición *de certiorari, págs. 430-434.*

[108] Véase, *Declaración Jurada de María I. Caraballo Gaud*, Apéndice de la petición de certiorari, pág. 430-1. Véase, además, Correo electrónico de 25 de septiembre de 2015, Apéndice de la petición de certiorari, pág. 589. Véase, también, Correo electrónico de 20 de junio de 2014, Apéndice de la petición de certiorari (CC-2019-0194, tomo 2) pág. 609.

precisamente fueron ejecutadas bajo la presidencia del señor Segarra Rivera.[109] No obstante, esas medidas no fueron suficientes y la compañía tuvo que entrar en un proceso de reorganización corporativa *bona fide*, que culminó con la incorporación de PRT en el 2016 y su eventual despido.[110] Esta pérdida de clientes provocó el cambio en la oferta de servicios rendidos al público por la empresa. Así, Intership presentó evidencia documental que acreditaba el proceso de reorganización corporativa,[111] y la creación del JV entre Intership y Tote, el cual a su vez creó a PRT en marzo de 2016. Por lo tanto, estas decisiones de negocio llevaron a Intership, en julio de 2016, a cerrar sus operaciones de estiba y cesantear a todos los empleados cuyas funciones principales estaban relacionadas al negocio de estiba y operación de terminal.[112] Así las cosas, la empresa evidenció que desde julio de 2016, no participa en el negocio de estiba y operación de terminal, sino que su negocio es el alquiler de chassis y agente de algunas compañías.[113]

---

[109] *Transcripción de la Deposición del Señor David Segarra,* Apéndice de la petición de certiorari, págs. 460-474.

[110] *Deposición del Sr. Hugh L. Simpson*, Apéndice de la petición de certiorari, pág. 315.

[111] Vease, Sea Star line- PR Action Plan, entre Intership y Tote (antes Sea Star Line), Apéndice de la petición de certiorari, págs. 223-224; Limited Liability Company Agreement of Puerto Rico Terminals, Apéndice de la petición de certiorari, págs. 233-285; Capital Contribution Agreement y el Asset and Liability Schedules, Apéndice de la petición de certiorari, págs. 294-301.

[112] El mismo TA reconoció en su Sentencia estos hechos materiales como incontrovertidos en los incisos 25-28. *Sentencia KLAN201801072*, Apéndice de la petición de certiorari, pág. 1136.

[113] Es importante señalar que el mismo recurrido en su carácter de presidente de Intership suscribió una carta el 6 de mayo de 2016 a un cliente notificando el proceso de reorganización de Intership y el

Sorprendentemente, aunque el TA enumera esos hechos materiales como incontrovertidos, de manera contradictoria, indica en su *Sentencia* que estos hechos no son materiales a la hora de determinar si el despido del recurrido fue justificado o no.[114] Por el contrario, claramente estos hechos incontrovertidos, demuestran que la reorganización provocada por el cese de operaciones del negocio de estiba y manejo de terminal fue lo que provocó el despido del recurrido.

### B.

Por otro lado, ahora atenderemos el señalamiento de error sobre la aplicación de los incisos (e) y (f) del Art. 2 de la Ley Núm. 80, *supra*, y la aplicación de la doctrina pautada en SLG Zapata v. JF Montalvo, *supra*. Intership sostiene que el TA erró en su decisión al atribuir razones incorrectas para la reorganización de la empresa y contrarias a la evidencia presentada en apoyo a las mociones dispositivas ante el foro de instancia. De manera similar, arguye que el TA evaluó erróneamente las causales de los incisos (e) y (f) del Art. 2 como una sola causal y aplicó ciertos requisitos para el inciso (e) que son aplicables al

---

cierre del negocio de estiba y operación de terminal. Aquí el recurrido aceptó que con la reorganización de Intership, este servicio lo proveería Puerto Rico Terminal. *Carta de 6 de mayo de 20216 notificando a cliente sobre el Joint Venture*, Apéndice de la petición de certiorari, pág. 210. Véase también, *Correo electrónico de 29 de junio de 2015*, Apéndice de la petición de certiorari, pág. 212; *Correo electrónico de 10 de septiembre de 2015*, Apéndice de la petición de certiorari, pág. 223.

[114] *Sentencia KLAN201801072*, Apéndice de la petición de certiorari, pág. 1131.

inciso (f) del Art. 2 de la Ley Núm. 80, *supra*. En efecto, **le asiste la razón.**

En armonía con el marco legal que detallamos previamente, el Art. 2 de Ley Núm. 80 reconoce que **no se considerará despido por justa causa** aquel que se hace por **mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.** Así, para que los patronos puedan cesantear a sus empleados justificadamente sin la obligación de pagar la indemnización correspondiente, tienen que justificar esa decisión en alguna de las circunstancias esbozadas en los incisos (e) y (f) del referido artículo. Específicamente, si la razón esbozada alude al inciso (e), es decir, **bajo la teoría de reorganización empresarial**, la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que el patrono **tiene que probar** que, en efecto, **se realizó una reorganización de buena fe**, y que, como parte de ese plan, el empleado fue despedido. Es decir, al argumentar como "justa causa" una reestructuración, lo que el patrono debe demostrar es que la acción de modificar su manera de hacer negocios se hizo en consideración al buen y normal funcionamiento del establecimiento. Pues, el concepto justa causa está arraigado a consideraciones que atañen al manejo de la empresa. En ese sentido, como correctamente establecimos en SLG Zapata v. JF Montalvo, *supra*, **no es**

función de los tribunales administrar los negocios ni aconsejar a los directores de estos cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono.[115]

Por consiguiente, según establecimos en SLG Zapata v. JF Montalvo, *supra*, para poder justificar el despido al amparo del Art. 2 inciso (e) ─por reorganización─ **el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad.** Ahora bien, hoy aclaramos, y pautamos, que para demostrar justa causa, **basta con articular y presentar prueba sobre una razón válida para el despido,** como por ejemplo sería la **reorganización empresarial** de los servicios rendidos al público. En ese sentido, **la obligación que impone la Ley Núm. 80, *supra,* de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o plan de reestructuración de una forma particular o específica.** O sea, basta con que el patrono demuestre que la acción

---

[115] Asimismo, los tribunales federales han atendido casos de despido de empleados por razones discriminatorias en relación con decisiones empresariales. En esas situaciones se les proveyó a los patronos un amplio margen de discreción en los asuntos relacionados a la administración de sus negocios. Conforme con esta jurisprudencia, no corresponde a los tribunales actuar como un súper departamento de recursos humanos y verificar la sensatez de las explicaciones propuestas como defensa. *SLG Zapata v. JF Montalvo,* supra, pág. 447. Véase, además: Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11mo Cir. 2010); Kasten v. Saint-Gobain Performance Plastics Corp., 703 F.3d 966 (7mo Cir. 2012); Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31 (1er Cir. 2012); Apsley v. Boeing Co., 691 F.3d 1184 (10mo Cir. 2012); Meléndez v. Autogermana, Inc., 622 F.3d 46 (1er Cir. 2010).

**respondió a una decisión gerencial válida** a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así, **tendrá que acreditarlo**. Ello, pues el patrono tiene derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa. Por cuanto, el juzgador de los hechos puede otorgarle valor probatorio a las declaraciones juradas presentadas, como a los testimonios vertidos mediante deposiciones y la prueba documental que las partes acompañan al someter una moción de sentencia sumaria si estos cumplen con los requisitos establecidos en la Regla 36.5 de Procedimiento Civil, *supra*. Ello, pues este tipo de evidencia puede contener hechos que podrían ser admisibles como prueba, si se basan en conocimiento personal de los declarantes en cuanto a su contenido en relación con la reorganización empresarial.

Por otro lado, colegimos que no existe disposición en la Ley Núm. 80, *supra*, que vincule la presencia de una circunstancia junto a la otra. Por ende, no necesariamente se requiere experimentar una reducción en el volumen de producción, ventas o ganancias de la empresa en su conjunto para que se justifique la reorganización. De este modo, un patrono podrá tomar la decisión de reorganizarse por cualquier motivo, siempre y cuando ello constituya una decisión empresarial válida, de utilidad y no un mero

capricho. Es decir, siempre que surjan condiciones en la operación del negocio que así lo justifiquen.

Ahora bien, en lo pertinente al caso ante nuestra consideración, al evaluar si el despido del señor Segarra Rivera estuvo justificado, tenemos que ponderar si Intership esbozó una razón válida dirigida a atender un asunto atinente al bienestar de la salud fiscal de la empresa, y la amparó en prueba suficiente y admisible. Es decir, si basó su determinación de despido en alguna de las circunstancias presentadas en los incisos 2(e) y 2(f) de la Ley Núm. 80, *supra*. Además, debemos evaluar si la prueba presentada por Intership en apoyo a sus alegaciones cumplió con el *quantum* de prueba requerido para que la acción en su contra por despido injustificado se desestimara en esa etapa de los procedimientos. Ante estas interrogantes, **respondemos en la afirmativa.**

En el presente caso, Intership le comunicó al recurrido que la razón de su despido fue resultado de una **reorganización** y **reducción de personal *bona fide* de la compañía.** Es decir, la empresa aludió correctamente a la circunstancia de reorganización provista por el Art. 2 inciso (e) de la Ley Núm. 80, *supra*. A su vez, mediante prueba documental, la empresa **demostró que llevó a cabo una reorganización empresarial en aras de enfrentar la crisis económica que albergaba,** adaptarse al mercado y convertir la

compañía en una más competitiva. Esta reorganización tuvo como resultado un **cambio en los servicios** que manejaba la empresa, pues, a partir de julio de 2016, no participaba en el negocio de estiba y operación de terminal, sino que su negocio era el alquiler de chassis y agente de algunas empresas. Por lo tanto, es forzoso concluir que el despido del recurrido estuvo justificado bajo el inciso 2(e) de la Ley Núm. 80, *supra,* en lo relativo a la reorganización empresarial y los cambios en los servicios rendidos al público por la compañía. En ese sentido, **sostenemos que la reorganización y los cambios en los servicios rendidos al público <u>son razones válidas y legítimas</u> para el despido de un empleado y están expresamente contenidas en el inciso (e) del Art. 2 de la Ley Núm. 80,** *supra*.

Ahora bien, una circunstancia distinta a las comprendidas en el antedicho inciso es la reducción en el volumen de producción, ventas o ganancias, según conceptuada en el inciso (f) del Art. 2 de la Ley Núm. 80, *supra*. Por ello, en <u>SLG Zapata v. JF Montalvo</u>, *supra*, sostuvimos que si el patrono pretende justificar el despido al amparo del inciso (f), debe presentar evidencia que acredite la presunta reducción en la producción, ventas o ganancias. Así, expresamos que el patrono debe establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido. A la luz de tales preceptos legales,

Intership también esbozó, tanto en su *Contestación a la Querella* como en su *Solicitud de Sentencia Sumaria* ante el foro de instancia, que otra de las razones por la cual llevó a cabo el proceso de reorganización empresarial fue para enfrentar la crisis económica que albergaba, con el propósito de poder adaptarse al mercado y convertir la compañía en una más competitiva.[116] En aras de evidenciar esa crisis económica, Intership presentó evidencia que acreditaba la reducción en la producción, ventas o ganancias.[117]

No obstante, sin fundamento alguno y en claro menosprecio de la evidencia presentada ante el foro primario, el foro apelativo concluyó que Intership esbozó distintas razones para justificar el despido del señor Segarra Rivera. Asimismo, determinó que Intership no pudo articular las razones por las que una reorganización de sus operaciones de estiba y terminal, así como un supuesto aumento en las tareas relacionadas a la contabilidad, requería el despido del recurrido. En una aplicación desacertada de las causales plasmadas en los incisos 2(e) y 2(f), el foro intermedio las evaluó como una sola y aplicó ciertos requisitos para el inciso (e) que son aplicables al inciso (f) de la referida

---

[116] Véase, *Contestación a la Querella*, Apéndice de la petición de certiorari, págs. 8-19; *Solicitud de Sentencia Sumaria*, Apéndice de la petición de certiorari, págs. 405-428.

[117] Véase, *Declaración Jurada*, Apéndice de la petición de certiorari, págs. 430-31. Véase, además, Correo electrónico de 25 de septiembre de 2015, Apéndice de la petición de certiorari, pág. 589. Véase, también, Correo electrónico de 20 de junio de 2014, Apéndice de la petición de certiorari (CC-2019-0194, tomo 2) pág. 609.

ley. Específicamente, el tribunal apelativo centró su análisis únicamente en el inciso 2(f) y obvió el inciso 2(e), el cual claramente resulta ser el inciso más adecuado para resolver la controversia de marras. Máxime, cuando la reorganización empresarial fue la circunstancia principal expresada por Intership para despedir al recurrido. Por ello, lo correcto hubiera sido evaluar las circunstancias esbozadas por la empresa para justificar el despido y analizar independientemente cada inciso para determinar la circunstancia que aplicaba en la presente controversia o, en la alternativa, evaluar y analizar si ambos incisos eran de aplicación.

En el caso de autos, el señor Segarra Rivera era el presidente de la compañía y para la fecha de su despido devengaba un salario anual sobre los $400,000.00. Este reconoció y admitió bajo juramento las medidas de reducción y control de gastos que la empresa realizó previo al 2016, los clientes que había ido perdiendo, y reconoció, además, que Tote, el cliente principal de la peticionaria para ese negocio, ya no iba a continuar siendo cliente de estiba de Intership.[118] El recurrido admitió que estuvo de acuerdo en que había que reducir la plantilla y despedir empleados de la empresa. También admitió que Intership salió del negocio

---

[118] Véase, *Transcripción de la Deposición del Sr. David Segarra Rivera*, Apéndice de la petición de certiorari, págs. 398-404.

de la estiba y que ese era el negocio principal de la empresa. Además, reconoció que su trabajo como presidente estuvo asociado principalmente a buscar clientes y retener los mismos para el negocio de estiba. El despido del recurrido, al igual que los demás despidos realizados, se debió a que ya no había trabajo o funciones para los empleados cuya labor principal estaba asociada al negocio de estiba. Los empleados o puestos impactados fueron los vinculados al negocio de estiba y operación de terminal. Ciertamente, la Ley Núm. 80, *supra*, no dispone ni puede interpretarse que un patrono debe mantener a un empleado en un puesto para el que ya no existen funciones que ejecutar.

Conforme a lo anterior, concluimos que Intership logró demostrar que las tareas del puesto del recurrido dejaron de llevarse a cabo en la compañía, lo que justificó el despido de este. De esta forma, a pesar de que el recurrido contaba con más antigüedad que la señora Caraballo Gaud en la compañía, Intership no violó el orden de retención dispuesto en el Art. 3 de la Ley Núm. 80, *supra*, pues según surge de la Deposición del recurrido, este no contaba con el conocimiento en contabilidad necesario para ejercer el puesto de CFO.[119]

---

[119] Véase, *Transcripción de la Deposición del Sr. David Segarra Rivera*, Apéndice de la petición de certiorari, págs. 435-439.

C.

Así las cosas, debido a que concluimos que **el despido del recurrido fue justificado**, consideramos igualmente improcedente su reclamación de discrimen por edad al amparo de Ley Núm. 100, *supra*, pues ante ello, el recurrido no logró establecer un caso de discrimen *prima facie*. Debido a que el despido del señor Segarra Rivera estuvo justificado, no se activó la presunción de discrimen que provee la Ley Núm. 100, *supra*. Además, no presentó prueba convincente de que la reorganización empresarial aludida fuera un pretexto de la peticionaria para discriminar en su contra por razón de su edad. Por lo tanto, el TA erró al revocar la decisión del TPI de desestimar las reclamaciones de despido injustificado y discrimen por edad presentadas por el señor Segarra Rivera.

De forma similar, tampoco cabe aplicar al presente caso las doctrinas de patrono sucesor, único patrono, ni la de traspaso de negocio en marcha. Según surge de la *Sentencia* del TA, el TPI en su *Sentencia* no actuó sobre las mismas ya que dilucidó primero la justificación del despido del recurrido y, al concluir que era justificado, no resolvió si las doctrinas eran aplicables o no. No obstante, diferimos de tal apreciación, ya que el foro de instancia sí se expresó en su *Sentencia* sobre la doctrina de patrono sucesor y único patrono y concluyó que no eran aplicables a este caso. En ese sentido, reiteramos que el negocio jurídico que une a estas

empresas es un JV. Así, no surge del expediente que las compañías involucradas tengan un control general de los asuntos críticos en los niveles de política laboral de las empresas.

Por otra parte, aunque el TPI expresamente no resolvió la aplicación de la figura de traspaso de negocio en marcha a la presente controversia, la realidad es que en consideración a los hechos materiales que no se encuentran en controversia, surge que, con la creación de PRT, no medió un traspaso de negocio en marcha. Así pues, un examen de los hechos incontrovertidos nos permite concluir que Intership, Tote y PRT son compañías con existencia jurídica independiente, en las cuales no existe control centralizado de las relaciones laborales de estas empresas, puesto que cada una tiene sus empleados, no ostentan una administración en común y sus operaciones no están interrelacionadas de manera que todas sean una sola entidad y un mismo patrono. La evidencia en apoyo a los hechos incontrovertidos en este caso establece que Intership y Tote tienen sus propios empleados, mientras que PRT tiene solo (2) empleados y subcontrata a SSA San Juan con relación a la mano de obra de estiba.

Por consiguiente, la reclamación en contra de Tote y PRT es improcedente, por ser contingente a la determinación de despido justificado realizada.

Finalmente, por todas las razones expresadas, erró el TA al revocar la *Sentencia* sumaria dictada por el TPI en el caso de autos. Concluimos que el TA abusó de su discreción al ignorar las exigencias impuestas por la Regla 36 de las de Procedimiento Civil, *supra*, e ignorar los hechos materiales relevantes a la presente controversia y determinar incorrectamente hechos irrelevantes que presuntamente creaban controversia. De igual forma, el foro intermedio aplicó incorrectamente el precedente sentado en <u>SLG Zapata v. JF Montalvo</u>, *supra*, ignorando lo dispuesto en el Art. 2 incisos (e) y (f) de la Ley Núm. 80, *supra*, para establecer un despido con justa causa en casos de reorganización de las operaciones de una empresa o negocio.

**IV**

Por los fundamentos que anteceden, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones y confirmamos la *Sentencia* dictada por el Tribunal de Primera Instancia (TPI) que desestimó sumariamente las reclamaciones del Sr. David R. Segarra Rivera. En consecuencia, se reinstala la *Sentencia* del TPI que determina que el despido en controversia estuvo justificado y no fue arbitrario ni caprichoso, ni estuvo motivado por razones discriminatorias.

De igual forma, debido a que la causa de acción en contra de Tote y PRT es improcedente, por ser contingente a la determinación de despido justificado realizada, se

sostiene la determinación del foro de primera instancia la cual resuelve sumariamente a su favor.

Se dictará sentencia de conformidad.


                    Edgardo Rivera García
                      Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| David R. Segarra Rivera<br><br>Recurrido<br><br>v.<br><br>International Shipping Agency, Inc.; Intership Tote, Inc./ Tote Maritime Puerto Rico, LLC; Puerto Rico Terminals, LLC y otros<br><br>Peticionarios | CC-2019-0193<br><br>Cons. con<br><br>CC-2019-0194 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de marzo 2022.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones y confirmamos la *Sentencia* dictada por el Tribunal de Primera Instancia (TPI) que desestimó sumariamente las reclamaciones del Sr. David R. Segarra Rivera. En consecuencia, se reinstala la *Sentencia* del TPI que determina que el despido en controversia estuvo justificado y no fue arbitrario ni caprichoso, ni estuvo motivado por razones discriminatorias.

De igual forma, debido a que la causa de acción en contra de Tote y PRT es improcedente por ser contingente a la determinación de despido justificado realizada, se sostiene la determinación del foro de primera instancia la cual resuelve sumariamente a su favor.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado Señor Estrella Martínez disiente con opinión escrita a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado Señor Colón Pérez.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| David R. Segarra Rivera<br><br>Recurrido<br><br>v.<br><br>International Agency, Inc.; Intership Tote, Inc./ Tote Maritime Puerto Rico, LLC; Puerto Rico Terminals, LLC y otros<br><br>Peticionarios | CC-2019-0193<br>cons. con<br>CC-2019-0194 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ, a la cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 23 de marzo de 2022.

En una maniobra desacertada e incierta, este Tribunal opta por resolver una controversia laboral ordinaria mediante la flexibilización desmedida del estándar de adjudicación con respecto a la evidencia acreditativa exigida a un patrono del sector privado para justificar un despido por razón de un plan de reorganización empresarial.

Esta liberalización desmesurada de una de las justificaciones contenidas en la <u>Ley de indemnización por despido sin justa causa</u>, <u>infra</u>, pretende ser minimizada, pues la Opinión mayoritaria intenta proyectar que solamente aclaran el precedente de <u>SLG Zapata-Rivera v. J.F. Montalvo</u>, infra, cuando la realidad es que lo empañan aún más. Ello constituye un quebranto conducente a la invisibilización,

cada vez más patente, de las normas de hermenéutica laboral diseñadas para proteger al obrero. Tras lo anterior, resulta ineludible que los reiterados pronunciamientos de este Tribunal con relación a que las leyes laborales deben ser interpretadas de manera liberal y favorable para el obrero están, progresivamente, pereciendo.

Con lo que hoy pauta una Mayoría, el camino para que un patrono justifique el despido de su empleomanía bajo el pretexto de una circunstancia empresarial sigue aplanándose; esto, mientras que el de los empleados y las empleadas que reclaman lo que corresponde en ley tras un despido cada vez es más cuesta arriba.

Me rehúso a avalar esta corriente, por lo que procedo a exponer las razones de mi disenso.

## I

Como es conocido, la Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA secs. 185a-185n (Ley Núm. 80), establece el estándar de justa causa como limitación a todo despido por parte de un patrono del sector privado. Así, el Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, enumera las instancias que, generalmente, justifican la cesantía de un empleado sin que el patrono incurra en alguna responsabilidad. Esas razones, de ordinario, se dividen en circunstancias que son imputables al obrero o, en la alternativa, al patrono.

Particularmente, el Art. 2 de la Ley Núm. 80, supra, contiene las circunstancias empresariales que se entenderán

como justa causa para el desplazamiento de un obrero. En lo pertinente, dispone las siguientes:

> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
>
> **(e)** Los cambios tecnológicos o **de reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. (Negrillas suplidas).[1] Íd.

Adviértase que la Opinión mayoritaria resuelve la controversia ante nuestra consideración, principalmente, al amparo del inciso (e) del Art. 2 de la Ley Núm. 80, supra. Al así hacerlo, flexibiliza el nivel de prueba acreditativa necesaria que debe presentar un patrono en aras de justificar un despido bajo el supuesto de una reorganización empresarial.

Según la visión de la Mayoría, para que un patrono quede libre de toda responsabilidad, en esencia, basta con

---

[1] Estas circunstancias no son imputables al obrero, pero, de configurarse, provocan que el despido sea prácticamente inevitable dentro de las normas usuales y ordinarias que imperan en el manejo de los negocios. Véase, Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. del S. 1112, 7ma Asamblea Legislativa, 3ra Sesión Ordinaria, 23 de abril de 1975.

que demuestre que realizó una "reorganización de buena fe, y que, como parte de ese plan, el empleado fue despedido".[2] Bajo ese entendido, este Tribunal pauta que, como la Ley Núm. 80 no obliga a "que se acredite la existencia de un proceso o plan de reestructuración de una forma particular o específica",[3] es suficiente con aducir que la reorganización "respondió a una decisión gerencial válida […]".[4]

Más allá de su efecto en el caso de autos, la premisa conceptual en la que se ancla la Mayoría brinda una carta en blanco a los patronos para prescindir de su plantilla laboral fácilmente, so pretexto de reorganización. **Esta determinación es contraria al precedente de este Tribunal que gobierna esta controversia** y, además, infringe los postulados más básicos de la Ley Núm. 80. Me explico.

En SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013), este Tribunal tuvo la oportunidad de evaluar si, a la luz de ciertas circunstancias empresariales, el despido de un empleado estuvo justificado. Allí, el patrono adujo que el despido fue debido a una reorganización causada por la disminución de los ingresos netos de la empresa. Adviértase que se trata de la convergencia de más de una de las circunstancias contenidas en la Ley Núm. 80. Siendo

---

[2] (Énfasis en el original omitido). Opinión mayoritaria, pág. 38.

[3] (Énfasis en el original omitido). Íd., pág. 39.

[4] Íd.

ello así, en el caso precitado se esbozaron los requisitos o particularidades que deben cumplir los patronos para realizar un despido por razón de: (1) una organización al amparo del inciso (e) **o**, (2) la reducción de ganancias a la luz del inciso (f), ambos de la Ley Núm. 80, <u>supra</u>.[5]

Por un lado, en <u>SLG Zapata-Rivera</u> se reconoció lo que es claro, que el "**Art. 2(e) de la Ley [Núm.] 80 permite despedir empleados** […] **como parte de una reorganización empresarial <u>que así lo requiere</u>**". (Énfasis y negrillas suplidas). Íd., pág. 426. Ello, pues, un patrono "puede modificar su forma de hacer negocios […] siempre que responda a una restructuración <u>bona fide</u>". Íd. Adviértase que, para justificar un despido motivado por una reorganización, esta, **por sí sola**, no es suficiente para despedir a un empleado, sino que es indispensable que sea el proceso de reestructuración en sí mismo el que dicte la obligatoriedad o lo indispensable de la cesantía.

Por tal razón, en <u>SLG Zapata-Rivera v. J.F. Montalvo</u>, supra, este Tribunal fue enfático en que para poder justificar el despido de un empleado bajo el inciso (e) de la Ley Núm. 80, <u>supra</u>, "**el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, <u>así como su utilidad</u>**". (Énfasis y negrillas suplidas). Íd., pág. 427. Nótese cómo se destacó que, adicional al plan de reestructuración implantado, también debía acreditarse su

---

[5]Véase, <u>SLG Zapata-Rivera v. J.F. Montalvo</u>, supra, págs. 420, 448.

utilidad. Ello, indudablemente, respondió a que, solo tras corroborar la utilidad del plan de reorganización de la empresa, los tribunales estarían en posición de evaluar si el despido se fundamentó en el buen y normal funcionamiento del negocio o en un acto arbitrario y caprichoso del patrono.

Este estándar de prueba en una de las justificaciones empresariales que exigen la cesantía de un empleado no es requerido únicamente bajo el inciso (e) de la Ley Núm. 80, supra. Como muestra de ello, en SLG Zapata-Rivera v. J.F. Montalvo, supra, también se precisó que bajo el Art. 2(f) no basta cualquier tipo de merma en ventas o ganancias, sino que su validez "únicamente será a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa". Íd. (haciendo referencia a la Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000, pág. 44).

Por tanto, y similarmente a cuando se utiliza la reorganización como razón para el despido, en el caso de cesantías al amparo del inciso (f) el patrono debe "presentar evidencia acreditativa […] de la alegada disminución en la producción, ventas o ganancias". Íd., pág. 427.

**Exigir menos provocaría que los patronos tuviesen rienda suelta para despedir a los empleados o las empleadas por razones ajenas al buen y normal funcionamiento de la empresa.**

Como puede verse, desde SLG Zapata-Rivera v. J.F. Montalvo, supra, este Tribunal analizó los propósitos sociales y las normas de hermenéuticas laborales que rigen en nuestro ordenamiento jurídico y delineó cómo los patronos deben justificar una reorganización a la luz del Art. 2 (e) de la Ley Núm. 80, supra.[6]

Indudablemente, las expresiones de este Tribunal en el caso precitado con respecto a que para que haya justa causa para un despido bajo el inciso (e) debe existir una "reorganización empresarial que así lo requiere" lo que, a su vez, implica que "el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad", **cumplen un propósito claro y no fueron plasmadas en el vacío.** Íd., pág. 427.

Tales exigencias, en palabras de este Tribunal, tienen como fundamento lo siguiente:

> [S]e rechazan mediante el Art. 2 de la Ley [Núm.] 80, supra, **actuaciones sin fundamento** que no vayan dirigidas a atender **asuntos concernientes al bienestar de la gestión empresarial** […]. Así lo reconoce el propio estatuto

---

[6]En SLG Zapata-Rivera v. J.F. Montalvo, supra, este Tribunal no tuvo que resolver si, en efecto, el patrono presentó evidencia acreditativa sobre el plan de reorganización, así como su utilidad, porque ello era innecesario para disponer de esa controversia en particular.

> al disponer que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento […]. (Negrillas y énfasis suplido). Íd., pág. 427.

Ciertamente, los pronunciamientos contenidos en SLG Zapata-Rivera v. J.F. Montalvo, supra, en cuanto a este particular, fueron coherentes. Además, son cónsonos con la política pública laboral que promulga la Ley Núm. 80 y las normas de hermenéutica que imperan en el ámbito laboral. Ello, máxime, ante el hecho de que reiteradamente hemos expresado que el patrono tiene que establecer un **nexo causal** entre la razón aducida y el despido en cuestión. Íd., pág. 429.

En ese sentido, en SLG Zapata-Rivera v. J.F. Montalvo, se validó que:

> **[L]a mera existencia de cambios** tecnológicos de producción, **de reorganización** o la reducción de la producción, ventas o ganancias, entre otros, **de por sí no justifican el despido** de empleados. **Es a la empresa a quien incumbe, por mandato de la ley, demostrar que por esas circunstancias se vio en la necesidad de despedir empleados**. En otras palabras, el patrono en todo momento deberá probar la justa causa del despido. (Negrillas y énfasis suplidos).[7]

Como puede verse, la mera existencia de una alegada reorganización, sin que se acredite su utilidad, de por sí

_____

[7]Íd., pág. 429 (citando a R. N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, [sin Ed.], rev. 2005, pág. 125).

no justifica el despido de empleados. Ahí, precisamente, radica la importancia de contar con un plan de reorganización que detalle su utilidad en aras de que se certifique que su fin es atender asuntos concernientes al bienestar de la gestión empresarial y que el despido de un empleado en particular propenderá al buen y normal funcionamiento de la empresa.

El propio Departamento del Trabajo, al analizar, particularmente, una enmienda introducida en el 2017 al inciso (f) del Art. 2 de la Ley Núm. 80, supra, destaca la utilidad de un plan interno que justifique el despido. Sobre este particular, dispone lo siguiente:

> Sobre aquel despido que se realiza para aumentar la productividad o competitividad del negocio, debemos señalar que esta disposición no puede ser interpretada de manera divorciada a la norma principal que es: ningún despido se puede realizar por motivos legalmente prohibidos o por el mero capricho del patrono.
>
> En ese sentido, somos de la opinión que, **para evitar el uso de pretextos para justificar despidos que verdaderamente son caprichosos, un patrono que despida** a empleados so color de hacer más competitivo a su negocio **deberá presentar <u>algún plan o estudio interno del negocio que demuestre el beneficio de no contar con la plantilla de empleados cesanteada</u>**.
>
> **No presentar un estudio** económico interno para proveer los pasos que mantendrán la productividad y competitividad del negocio, **harán en extremo difícil demostrar que el verdadero motivo patronal para el despido es la viabilidad del negocio y no el capricho del patrono.** Lo anterior no significa que un negocio tiene que estar operando con pérdidas económicas

o que el plan o estudio interno requiera un grado específico de complejidad.[8] (Negrillas y énfasis suplidos).

Ante la ausencia de un plan de reorganización que evidencie su utilidad, cabe preguntarse cómo los tribunales podrán determinar si el curso de acción tomado por el patrono fue uno legítimo, atado a la dirección gerencial de la empresa y basado en información y criterios apropiados. Asimismo, de qué manera evaluarán si el despido fue el resultado de un análisis ponderado de los intereses en juego en el contexto de un plan de reorganización empresarial en protección del buen y normal funcionamiento del negocio. Por tanto, sin un plan de reorganización que evidencie cómo el despido ayudaría a la consecución del esquema de negocio, no cabe hablar de una reestructuración bona fide.

Y es que, si bien el patrono tiene la prerrogativa de dirigir su negocio o establecimiento de la manera que entienda más conveniente a sus intereses económicos u operacionales y que, de ordinario, no debemos intervenir en cuanto a la sabiduría o conveniencia administrativa de esa decisión gerencial, **la ausencia de un plan reorganización per se, que detalle su utilidad, imposibilita que los tribunales ausculten si la reorganización exigía el despido del empleado en aras de salvaguardar el buen y normal**

_____

[8]Guía para la Interpretación de la Legislación Laboral de Puerto Rico, 1era Edición, 8 de mayo de 2019, pág. 129. Se advierte que se optó por separar las oraciones pertinentes del análisis precitado realizado por el Departamento del Trabajo con el propósito exclusivo de ilustrar una mejor comprensión de lo expuesto.

**funcionamiento del negocio o si se trata de una actuación arbitraria y caprichosa.**

Lo que es más, la falta de un plan de reorganización nublará la evaluación del nexo causal entre la razón aducida y el despido. Ello, con el agravante de que, potencialmente, se encubrirá la verdadera razón del despido. Dado a lo que hoy pauta la Mayoría, el patrono goza con una carta en blanco para, bajo el pretexto de una reestructuración de buena fe, despedir a su empleomanía sin que se corrobore si, en efecto, la cesantía era indispensable para el sostenimiento de la empresa.

En fin, no puedo refrendar que un patrono despida a un empleado o una empleada por razón de una alegada reorganización cuando no existe un plan de reorganización empresarial delineado que precise cómo el despido de cierto empleado o empleada es indispensable para lograr el buen y normal funcionamiento de la empresa.

## II

Hoy, se avala que, en el futuro, un patrono despida a su plantilla laboral por razón de una reorganización sin que este tenga que evidenciar un plan de reorganización, así como su utilidad. Lamentablemente, esto provocará una avalancha insostenible de "reestructuraciones bona fide" en las que no existirá un nexo causal entre la reorganización y el despido.

Como puede verse, la relación obrero-patronal, desigual, por su naturaleza, se inclina injustificadamente

cada vez más a favor del patrono. Ello, con la consecuencia de que, de ahora en adelante, la empleomanía del sector privado estará a la merced de que su patrono, so pretexto de una reorganización y mediante un acto arbitrario y caprichoso, les despida por razones ajenas al buen y normal funcionamiento del negocio.

Con tal proceder, este Tribunal lacera el andamiaje legislativo en el ámbito laboral y las normas de hermenéutica que tienen como propósito proteger al empleado de actuaciones arbitrarias o caprichosas por parte del patrono. **Por ello, disiento**.

Luis F. Estrella Martínez
Juez Asociado